A99A1135. HUTCHINS v. J. H. HARVEY COMPANY.
(524 SE2d 289)

PHIPPS, Judge.

Minnie T. Hutchins filed a slip and fall action against J. H. Harvey Company, claiming its negligence caused her fall and resulting injury. J. H. Harvey sought summary judgment, claiming Hutchins failed to show (1) what caused her fall, (2) that J. H. Harvey had actual or constructive knowledge of the alleged foreign substance, or (3) that she exercised ordinary care for her own safety. Hutchins appeals the trial court's order granting J. H. Harvey's motion. Because we find that issues of fact remain regarding all three issues, we reverse.

At approximately 9:00 a.m. on March 31, 1996, Hutchins went into a J. H. Harvey supermarket to buy a few items on her way to a church meeting. Shortly after she entered the store, Hutchins pulled a shopping buggy out of the line of buggies, straightened out the wheels, and began to walk behind it. As she started to walk forward, she slipped and fell on her hands and knees. Hutchins admitted at deposition that, before she fell, she did not see anything on the floor. She also testified, however, that something on the floor soiled her dress. Hutchins was looking at the buggy, not the floor, when she fell and did not expect anything to be on the floor near the door.

After she fell, Hutchins discovered a nine-inch puddle of clear liquid on the floor. Hutchins conceded that if she had been looking for it, she probably could have seen the puddle.

After Hutchins got up, J. H. Harvey's manager, Keith Rice, came over to where she had fallen and asked her if she wanted to fill out an accident report. Hutchins said she did and went to Rice's office to fill out the report. In her portion of the report, Hutchins did not mention what caused her fall.

Rice testified at deposition that he checked the floor where Hutchins had fallen by getting down on his knees and feeling the floor. He noticed that Hutchins's shoes, pumps with one and a half-inch heels and leather soles, had left a black skid mark on the floor where she fell, but he saw nothing that would have caused her to fall. Rice instructed one of his employees to take photographs of the floor where Hutchins fell. In his portion of the accident report, Rice stated that he found nothing on the floor where Hutchins fell.

Hutchins's son was waiting outside in the car for her. When told that his mother had fallen, he came into the store and went straight to the office (at the front of the store) where she was sitting. He never looked at the spot where she fell. Hutchins's son then went to the back of the store to get the items his mother had come to buy and saw someone cleaning the floors with a machine. Based on his experience in the cleaning industry, Hutchins's son was familiar with the cleaning machine in use. He testified at deposition that the machine would leave some moisture on the floor after cleaning and it would take about 20 to 30 minutes to dry. He also testified he did not see any excess water on the floor where it was being cleaned and that the person operating the machine was doing a good job.

Rice testified at deposition that a J. H. Harvey employee was responsible for running the cleaning and buffing machines every morning and that the procedure took about an hour and 15 minutes. According to Rice, the machine used a reddish-pink cleaning liquid that was dispensed by the operator onto the brushes to clean the floor. There were additional brushes and a vacuum system behind the first row of brushes, which picked up all of the liquid so that it was dry as the operator walked behind the machine. Rice conceded that if the operator dispensed too much liquid, the pads could become saturated and excess liquid would be thrown out the sides. The operator should have picked up any excess liquid as he proceeded with the cleaning.

Rice also testified that J. H. Harvey's inspection procedures required the floor to be swept and inspected every two hours. In addition, spot cleaning was performed if, for example, a customer dropped an item and the floor required cleaning.

When the store was swept, the employee who did it recorded the time of sweeping on a sweep card. Based on the sweep card for March 31, the floors were swept and inspected between 7:17 a.m. and 7:47 a.m., but not between 7:47 a.m. and about 9:00 a.m., the time when Hutchins fell. Rice testified that there could have been sweeping not reflected on the sweep cards, but he was not aware of any.

We review the trial court's grant of summary judgment de novo to determine if the evidence demonstrates any genuine issue of mate-

rial fact.[1] To prevail, the moving party must demonstrate that there are no genuine issues of any material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, support judgment as a matter of law.[2] "A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case."[3]

1. To prove negligence in a slip and fall premises liability case, the plaintiff must show (1) the defendant had actual or constructive knowledge of the foreign substance, and (2) the plaintiff lacked knowledge of the substance or for some reason attributable to the defendant was prevented from discovering it.[4] A plaintiff who alleges she slipped on a foreign substance must present some evidence of a foreign substance on the ground where she slipped.[5]

Hutchins testified that she saw a clear puddle of liquid on the floor where she fell and that it soiled her dress. Rice, on the other hand, testified that there was nothing on the floor where Hutchins fell and that photographs were taken to prove the absence of any foreign substance. But the photographs do not conclusively show whether anything was on the floor at the time. Hutchins's testimony, which has not been clearly refuted, is sufficient to create a genuine issue of material fact regarding the presence of a foreign substance on the floor where she fell.

2. Next, Hutchins must show that J. H. Harvey had actual or constructive knowledge of the foreign substance. Hutchins makes no claim that J. H. Harvey had actual knowledge of the hazard causing her fall. She may establish constructive knowledge by either of two methods. She must show that an employee of J. H. Harvey was in the immediate area of the hazard and easily could have seen the substance, or she must show that the foreign substance remained on the floor long enough that ordinary diligence by J. H. Harvey should have discovered it.[6]

Hutchins testified that she was not sure if anyone actually saw her fall, but that a J. H. Harvey employee saw her as she was getting up. According to Hutchins, the employee who saw her get up worked at the cash register. Hutchins was not looking at the floor and did not see the liquid until she was actually on the floor. And there is no evi-

[1] *Howell v. Styles*, 221 Ga. App. 781, 784 (4) (472 SE2d 548) (1996).

[2] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] (Emphasis omitted.) Id.

[4] *Robinson v. Kroger Co.*, 268 Ga. 735, 736 (1) (493 SE2d 403) (1997).

[5] *Williams v. EMRO Marketing Co.*, 229 Ga. App. 468, 469 (2) (494 SE2d 218) (1997); *Bradley v. Red Food Stores*, 179 Ga. App. 39, 40 (345 SE2d 127) (1986).

[6] *Brown v. Piggly Wiggly Southern*, 228 Ga. App. 629, 631 (3) (b) (493 SE2d 196) (1997).

dence that an employee who could have seen the clear liquid prior to Hutchins's fall was working nearby.

Hutchins claims that J. H. Harvey had constructive knowledge of the substance because the employee cleaning the floor knew that he had dispensed the liquid on the floor and failed to clean it up. Although a jury could infer that the liquid on the floor came from the cleaning machine, Hutchins's son testified that the employee operating the machine was at the back of the store shortly after his mother fell. Hutchins's son also testified that he saw no excess water on the floor where the employee was operating the machine and it appeared that the employee was doing a good job. Viewing these facts in a light most favorable to Hutchins, we see no reasonable basis on which to conclude that the employee operating the cleaning machine had knowledge (which could be imputed to J. H. Harvey) of the liquid on the floor at the front of the store.

Having failed to establish that a J. H. Harvey employee was in the immediate vicinity when she fell, Hutchins must use the second method of proving constructive knowledge.

> Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident.[7]

In addition, on a motion for summary judgment, the owner must demonstrate its inspection procedures before the plaintiff must show how long the hazard has been present.[8]

J. H. Harvey presented evidence of its general inspection procedures and the procedures utilized the day Hutchins fell. We cannot conclude as a matter of law, however, that J. H. Harvey's inspection procedures were reasonable under the circumstances. The length of time the substance must remain on the floor before the owner should have discovered it and what constitutes a reasonable inspection procedure vary, depending on the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the store's location.[9] Rice testified that he was not aware of

---

[7] *Avery v. Cleveland Avenue Motel*, 239 Ga. App. 644, 645-646 (2) (521 SE2d 668) (1999); see *Ingles Markets v. Martin*, 236 Ga. App. 810, 811 (513 SE2d 536) (1999); *Straughter v. J. H. Harvey Co.*, 232 Ga. App. 29, 30 (1) (500 SE2d 353) (1998).

[8] Id.

[9] *J. H. Harvey Co. v. Reddick*, 240 Ga. App. 466, 469 (1) (b) (522 SE2d 749) (1999); *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980).

any sweeping or inspection between 7:47 a.m. and the time Hutchins fell (between 9:00 a.m. and 9:10 a.m.), a period of at least one hour and fifteen minutes, and that the substance could have been on the floor that long. Under these circumstances, we find that the reasonableness of J. H. Harvey's cleaning and inspection procedures was for the jury to determine.[10]

3. J. H. Harvey contends Hutchins failed to exercise reasonable care for her own safety because she was looking at the shopping buggy when she fell and probably could have seen the liquid if she had been looking for it. In *Robinson v. Kroger Co.*, the Supreme Court of Georgia rejected any requirement that an invitee look continuously at the floor for defects because "the invitee is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe."[11] Hutchins's failure to look at the floor as she began pushing her shopping buggy forward does not establish that she failed to exercise reasonable care for her own safety as a matter of law. In addition, Hutchins may not have seen the clear liquid even if she had been looking down as she walked. J. H. Harvey is not entitled to summary judgment on this issue.

*Judgment reversed. Pope, P. J., and Smith, J., concur.*

DECIDED NOVEMBER 1, 1999 — 

*Rodney M. Keys*, for appellant.

*Clyatt, Clyatt & DeVaughn, Robert M. Clyatt, Carl G. Fulp III*, for appellee.

---

[10] See id. (failure to inspect supermarket floor for period of one hour and forty-two minutes prior to fall gave rise to jury question on reasonableness of procedures); *Jones v. Krystal Co.*, 231 Ga. App. 102, 104-105 (498 SE2d 565) (1998) (failure to inspect fast food restaurant during twenty-minute period may be unreasonable).

[11] *Robinson*, supra at 743.

